E-FILED  2025 NOV 03 5:21 PM JEFFERSON - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR JEFFERSON COUNTY

| | |
|---|---|
| JUDY HEISEL, | CASE NO. |
| Plaintiff, | |
| vs. | PETITION AT LAW AND JURY DEMAND |
| JEFFERSON COUNTY, IOWA, CHAUNCEY MOULDING (individually and in his official capacity), LEE DIMMITT (individually and in his official capacity), SUSIE DRISH (individually and in her official capacity), DEE SANDQUIST (individually and in his official capacity), AMANDA MORENO, M.D. (individually and in her official capacity), | |
| Defendants. | |

COMES NOW the Plaintiff, through her undersigned counsel, and for her Petition at Law and Jury Demand states as follows:

### **INTRODUCTION**

1.     Judy Heisel ("Heisel") brings this action to redress wrongs committed against her relating to her end of employment with Jefferson County, for violations of her civil rights, for defamation, and for malicious prosecution.

E-FILED 2025 NOV 03 5:21 PM JEFFERSON - CLERK OF DISTRICT COURT

## **PARTIES AND JURISDICTION**

2.     Heisel was at all material times a resident of Jefferson County, Iowa and an employee of Jefferson County.

3.     Jefferson County, Iowa ("the County") is an Iowa municipality as defined in Iowa Code §670.1(2).

4.     Chauncey Moulding is employed as the Jefferson County Attorney and, upon information and belief, resides in Jefferson County.

5.     Dr. Amanda Moreno is the Jefferson County Ambulance Service Medical Director and upon information and belief resides in Jefferson County, Iowa.

6.     Jefferson County, Iowa is governed by a Board of Supervisors constituted currently by: Lee Dimmitt, Susie Drish, and Joe Ledger.

7.     Lee Dimmitt is a member of the Jefferson County Board of Supervisors and upon information and belief resides in Jefferson County, Iowa.

8.     Susie Drish is a member of the Jefferson County Board of Supervisors and upon information and belief resides in Jefferson County, Iowa.

9.     Dee Sandquist was, at times relevant to this case, was a member of the Jefferson County Board of Supervisors and upon information and belief resides in Jefferson County, Iowa.

10.     Current Board member Joe Ledger replaced Dee Sandquist after the November 5, 2024 election.

11.     The term "Board" and "Supervisors" when used in this Petition refers to the conduct of Supervisors Dimmitt, Drish, and Sandquist.

E-FILED  2025 NOV 03 5:21 PM JEFFERSON - CLERK OF DISTRICT COURT

12.   The conduct and injuries giving rise to this lawsuit occurred in Jefferson County, Iowa.

13.   This Court has jurisdiction over this matter as the value exceeds the small claims jurisdictional amount.

14.   Venue is appropriate in this court as all the acts material to the claim occurred in Jefferson County, Iowa.

15.   Heisel timely filed a civil rights complaint with the Iowa Office of Civil Rights and was granted a right to sue letter. This action is brought within 90 days of that letter being issued.

## BACKGROUND

16.   In 2023, Jefferson County created a publicly operated ambulance service that began operation on October 1, 2023. Prior to a county-based service, the County previously contracted with private ambulance service companies to provide EMS services.

17.    On or about May 30, 2023, Heisel was hired by the Board as the Jefferson County Ambulance Service Base Manager with a starting salary of $65,000. Heisel reported to the Ambulance Director, Brian Thomas.

18.   Heisel was an integral and crucial part of getting the Jefferson County Ambulance Service operational.

19.   On or about April 17, 2024, Ambulance Director Thomas resigned.

20.   Immediately following Thomas's resignation on April 17, 2024, without hesitation, Supervisor Sandquist asked Heisel if she would step into the role of Interim Director. Supervisor Sandquist told Heisel not to worry and that the role of Interim Director was just a formality.

21.     On April 24, 2024, at the Board of Supervisors meeting, the Board officially accepted Director Thomas's resignation. At the time of his resignation, Thomas's director salary was $85,000.

22.     At the same meeting, the Board formally appointed Heisel to serve as interim Ambulance Director "with the salary Brian Thomas was making effective now."

23.     At the time of Heisel's appointment to interim Director, the Board set a review period of four months from that date, to approximately August 2024, if the permanent Ambulance Director position was not filled.

24.     Five days later, on April 29, 2024, the Board moved and approved not increasing Heisel's salary.

## REPORTING TO IOWA BUREAU OF EMERGENCY MEDICAL AND TRAUMA SERVICES (BEMTS)

25.     On or about April 29, 2024, Heisel became aware that the day before Damien Wimmer, Emergency Medical Technician (EMT) for Jefferson County Ambulance services, engaged in conduct outside his scope of practice.

26.     Heisel immediately notified and reported the violation to Jack Reed and Dr. Moreno.

27.     Wimmer received a two-week suspension.

28.     Pursuant to state law, the Wimmer incident was to be reported to the Iowa Department of Health and Human Services. Dr. Moreno assured Heisel she would take care of it.

29.     Heisel and Dr. Moreno emailed several times about reporting the incident. Heisel reminded Dr. Moreno it needed to be reported within 30 days of the occurrence.

30.     Iowa DHHS compliance officer, Travis Clark, spoke with Dr. Moreno about the incident. Clark sent Dr. Moreno the complaint form and requested that she complete it for an investigation to be initiated.

31.     On or about May 31, 2024, Damien Wimmer, while acting as a Libertyville First Responder, again, engaged in conduct outside his scope of practice.

32.     Heisel eventually became aware of this and reported to Reed and Dr. Moreno. Heisel also notified Jacob Dodds, regional EMS Coordinator.

33.     Dodds informed Heisel that as of June 20, 2024, Dr. Moreno had not provided the completed complaint form to Iowa DHHS from Wimmer's first reportable incident in April 2024. Dodds sent Heisel complaint forms and requested Heisel complete the complaint forms for both the first and second incidents related to Wimmer.

34.      On June 21, 2024, Heisel provided the completed complaint forms for both incidents to Travis Clark.

35.     On or about June 21, 2024, Wimmer was terminated as an EMT with Jefferson County Ambulance.

36.     On information and belief, Wimmer and Dr. Moreno have been close friends for several years.

37.     On information and belief, Wimmer and Dr. Moreno were on vacation together while Dr. Moreno was attending and participating in Heisel's second interview via Zoom.

38.     Dr. Moreno did not want Heisel to be hired as Ambulance Director due to Heisel reporting her long-time friend Wimmer, which eventually resulted in his termination.

E-FILED 2025 NOV 03 5:21 PM JEFFERSON - CLERK OF DISTRICT COURT

### HEISEL'S TENURE AS ACTING INTERM ABULANCE DIRECTOR

39.    On or about May 20, 2024, the Board formally approved combining the Ambulance Director and Base Manager position to one position — Ambulance Director— thereby eliminating the Base Manager position -- Heisel's old position.

40.    While Heisel was Interim Director, she continued to fulfill her duties and responsibilities as Base Manager. When the Base Manager position was officially eliminated, the duties and responsibilities of both positions were still fulfilled by Heisel.

41.    On or about June 10, 2024, the Board characterized Heisel's position as "Interim Director/Manager/Paramedic."

42.    Effective July 1, 2024, Heisel's salary was still $65,000.

43.    All three Supervisors consistently expressed to Heisel that she was doing a fantastic job, that she was picking up the new role extremely fast and well, and they were excited for the future of the ambulance service.

### HIRING PROCESS FOR AMBULANCE DIRECTOR POSITION

44.    On or about May 13, 2024, the Board posted the Ambulance Director job.

45.    The job posting was to stay open until June 7, 2024, at 4:00 p.m.

46.    Supervisor Sandquist unilaterally appointed  Dr. Moreno and HR contractor/consultant Jack Reed to serve on the "hiring committee."

47.    Supervisor Sandquist made it well known that she would heavily rely on the opinion of Dr. Moreno.

48.    On or about June 5, 2024, Supervisor Sandquist admitted and acknowledged that she began personally reaching out to individuals, asking them to apply for the Ambulance Director position.

E-FILED 2025 NOV 03 5:21 PM JEFFERSON - CLERK OF DISTRICT COURT

49.     Heisel did not submit a formal application before the first deadline of June 7, 2024 for the position because the Board told her she did not have to.

50.     On or about June 11, 2024, Heisel submitted her application for the Ambulance Director position after the Board changed its mind and requested she do so.

51.     Heisel was the only internal applicant for the Ambulance Director position.

52.     On June 20, 2024, Supervisor Sandquist, Jack Reed, and Dr. Amanda Moreno conducted Heisel's first interview for the Ambulance Director position via Zoom.

## SUPERVISORS DIMMITT AND DRISH'S PHONE CALL (QUORUM)

53.     On or about June 24, 2024, Supervisor Dimmitt and Supervisor Drish had a phone conversation discussing the hiring process for the Ambulance Director position.

54.     Supervisor Dimmitt was at the Jefferson County Ambulance Services building in Heisel's office with Heisel during the phone conversation.

55.     Supervisor Dimmitt intentionally put the conversation with Supervisor Drish on speaker phone to allow Heisel to hear and participate in the conversation.

56.     Supervisor Dimmitt expressed frustration with the input, feedback, and opinions from Dr. Moreno and Jack Reed during the Ambulance Director hiring process because they do not vote on which candidate to hire.

57.     Supervisor Dimmitt stated the entire hiring process for the Ambulance Director position was flawed.

58.     According to Supervisor Dimmitt, Supervisor Sandquist did not tell Supervisors Dimmitt or Drish who any of the outside applicants for the position were.

59.     Supervisor Dimmitt told Supervisor Drish that he feels like they have the right person; that that person has demonstrated their support for the system; their support for the

county; their desire to serve the residents of the county, and the ability to do the job from every aspect — referring to Heisel.

60.     Supervisor Drish stated that she did not disagree with what Supervisor Dimmitt was saying.

61.     Supervisor Dimmitt stated to Supervisor Drish that as a direct result of Heisel and her connections, the Jefferson County Ambulance service has something that a lot of services, public services in particular, don't have the luxury of having, which is a full staff, critical care paramedics and medics still coming to the county.

62.     Supervisor Dimmitt acknowledged being fully supportive of Heisel to get the position.

63.     This conversation was the basis for an Iowa Public Information Board complaint.

### HEISEL'S SECOND INTERVIEW

64.     On June 26, 2024, Heisel's second interview took place at the Jefferson County courthouse.

65.     The Board was personally present, along with County Attorney Chauncey Moulding.

66.     Dr. Moreno and Jack Reed were present via Zoom web interface.

67.     Dr. Moreno was at the Lake of the Ozarks in Missouri. Based on information and belief, she was on vacation with Damien Wimmer while attending and participating in Heisel's second interview.

68.     Approximately 30 minutes into the interview, Dr. Moreno stated that nobody was addressing the "elephant in the room."

E-FILED  2025 NOV 03 5:21 PM JEFFERSON - CLERK OF DISTRICT COURT

69.     Dr. Moreno stated that what was going on at the ambulance base currently was an "internal dumpster fire" that needed to be addressed.

70.     Dr. Moreno asked Heisel what had happened, specifically what had happened with Brian Thomas, the former Ambulance Director.

71.     Dr. Moreno clarified she was referring to Heisel having sexual relations with Thomas.

72.     Heisel explicitly stated she was not going to discuss her personal life in the interview.

73.     Dr. Moreno said it wasn't her personal life, that Thomas was her boss which was the problem.

74.     Supervisor Dimmitt interjected, asking County Attorney Moulding if the Board and hiring committee were going to be asking questions about all other subsequent interviewees' personal lives.

75.     Attorney Moulding advised the Board it was their interview and they could ask whatever them deemed appropriate.

76.     Supervisor Dimmitt and Dr. Moreno began engaging in heated discussions.

77.     Dr. Moreno stated the County is being put at risk.

78.     Dr. Moreno claimed she heard that Heisel and Thomas were having sex in the ambulance building.

79.     Dr. Moreno claimed people were telling her that Heisel had to be on monitors and have IVs because she was abusing prescription drugs.

80.     Supervisor Dimmitt, Dr. Moreno, and Supervisor Drish continued to engage in heated exchanges and were speaking over one another.

E-FILED  2025 NOV 03 5:21 PM JEFFERSON - CLERK OF DISTRICT COURT

81.    At several times throughout the interview, more than one person had to remind the group that this was a job interview.

82.    Supervisor Drish warned Dr. Moreno about talking about or making accusations in the interview.

83.    Dr. Moreno responded, stating she was just reporting what she was hearing, that she was not making accusations.

84.    Dr. Moreno further said people were coming to her bringing these concerns.

85.    Dr. Moreno said something like we can't have people abusing prescription substances or being put on EKG's and getting IV's at work — all in reference to Heisel.

86.    After the interview concluded, Supervisor Dimmitt requested to make a comment. He stated the interview that was just conducted of Heisel was unprofessional specifically referencing the accusations against Heisel.

### BOARD CONSIDERS APPLICANTS AND REOPENS APPLICATION PERIOD

87.    On July 11, 2024, the Board held a public meeting to discuss the Ambulance Director candidates.

88.    During the discussion, the Board agreed to talk about the applicants by numbers 1, 2, and 3.

89.    Supervisor Dimmitt discussed how Applicant 3 did not have the minimum five years of progressive EMS management experience and responsibility as outlined in the job description.

90.    Supervisor Dimmitt identified that neither Applicant 3 nor Applicant 2 had four plus years of active experience working in paramedics as outlined in the job description.

E-FILED 2025 NOV 03 5:21 PM JEFFERSON - CLERK OF DISTRICT COURT

91.     Supervisor Dimmitt identified that Applicant 1 had at least five years of management experience, plus 20 years of active paramedic service.

92.     Dr. Moreno believed they should keep searching for applicants.

93.     On July 11, 2024, the Board approved by a 2-1 vote to reopen the Ambulance Director application period until July 31, 2024.

94.     Supervisors Drish and Sandquist voted in favor of reopening the application, and Supervisor Dimmitt voted against.

## MEETING AFTER SECOND INTERVIEW

95.     After the Board of Supervisors meeting on July 11, 2024, Jack Reed from HR and Heisel had a phone conversation.

96.     Reed stated Dr. Moreno opened up a floodgate of potential liability onto Jefferson County based on her statements in Heisel's second interview.

97.     Reed told Heisel he had a conversation with Moulding and warned Moulding this created liability for Jefferson County. Reed stated Moulding acknowledged this and agreed.

98.     Reed advised Heisel that she should ask the Supervisors to have another meeting to address the inappropriate and potentially illegal topics brought up in her second interview.

99.     Reed told Heisel that he has spoken in favor of the Board choosing Heisel to be Ambulance Director.

100.    On or about July 15, 2024, a Board meeting was held, and the Supervisors, Moulding, Jack Reed, Heisel, and Paul Greufe previous Jefferson County HR contractor, were present in person or via phone or Zoom.

E-FILED 2025 NOV 03 5:21 PM JEFFERSON - CLERK OF DISTRICT COURT

101.    At the July 15, 2024 meeting, Greufe expressed his belief that the Board's entire hiring process of a permanent Ambulance Director was inappropriate and unfair, especially to Heisel.

102.    Supervisor Dimmitt argued the Board's reopening the application period implies none of the current candidates, including Heisel, meet the standards they are looking for.

103.    Supervisor Dimmitt expressed frustration that Heisel was in "limbo" while the Board attempted to search for a better candidate.

## BOARD HIRES AMBULANCE DIRECTOR

104.    On or about July 23, 2024, the Board approved and modified the job posting for the Jefferson County Ambulance Director to change the deadline from July 31, 2024, to "until filled."

105.    On July 29, 2024, the Board approved by a 2-1 vote to make an offer of employment for the Ambulance Director position to the fourth candidate.

106.    Supervisors Drish and Sandquist voted in favor of offering the position to the fourth candidate, and Supervisor Dummitt voted against.

107.    On August 5, 2024, the Board set the start date for the Ambulance Director retroactively as August 1, 2024.

108.    On August 5, 2024, Josh Hemminger was hired as the Ambulance Director with a starting salary of $85,000.

109.    Heisel attended the August 5, 2024 Board meeting where she found out that Hemminger was offered the position.

E-FILED 2025 NOV 03 5:21 PM JEFFERSON - CLERK OF DISTRICT COURT

## HEISEL'S LAST DAY OF EMPLOYMENT — AUGUST 5, 2024

110.    After the Board meeting, Hemminger, Moulding, Drish, and Assistant Jefferson County Attorney Elizabeth Estey went to the Ambulance building to begin the Director transition from Heisel to Hemminger.

111.    In lieu of the job for which she applied, the County made a theoretical job offer for Heisel to continue being employed by the County.

112.    The County stated to Heisel that it might have a position for her, but did not reveal the job position or title, duties and responsibilities, wages, or any other information related to the theoretical position. Heisel requested more information in order to make an informed decision. In response, the County told her she had to formally accept the offer before those details and information would be given to her.

113.    Heisel said she could not accept an offer so ambiguous as to not be an offer at all. The County then presented her with severance paperwork suggesting that the offer of employment was not bona fide. Heisel rejected the severance package.

114.    Jack Reed was not a participant in these discussions and was not personally present at this meeting on August 5, 2024.

115.    Heisel was asked what Hemminger needed in order to start the transition to being Ambulance Director.

116.    Heisel explained there was a lot of information he was going to need including: getting set up with billing, which involved Medicare and Medicaid, creating all new passwords for all the systems, getting access to the bank account, and creating an account for ImageTrend, the charting system,

E-FILED 2025 NOV 03 5:21 PM JEFFERSON - CLERK OF DISTRICT COURT

117.    Heisel asked if the County wanted her to pack up her belongings and leave that very day. Moulding responded in the affirmative.

118.    Heisel stated she can pack up her items and leave that day. She stated Hemminger was going to have a lot of work ahead of him in transitioning into the role.

119.    Moulding asked Heisel if she would be interested in walking Hemminger through those things.

120.    Heisel continued talking through the Ambulance Service systems with Hemminger and showed him where things were located. Heisel informed Hemminger that the state investigation into Damien Wimmer was ongoing.

## FAIRFIELD POLICE DEPARTMENT CALL TO AMBULANCE BUILDING

121.    On August 5, 2024, a few hours after Heisel had left, Officer Rylee Nuno and Police Chief David Thomas of Fairfield Police Department were dispatched to the Ambulance building ("Ambulance barn") on a report of destruction of property.

122.    Moulding reported to Fairfield PD that the County IT department notified him that there had been a network intrusion of the computers at the Ambulance barn. It was reported that computers appeared to be factory reset and information on the computers was lost.

123.    Officer Nuno created an investigative case summary report. No persons were charged or arrested as a result of the dispatch call related to destruction of property. Officer Nuno did not draft any investigative narratives on August 5, 2024.

E-FILED 2025 NOV 03 5:21 PM JEFFERSON - CLERK OF DISTRICT COURT

## IOWA PUBLIC INFORMATION BOARD CASE NUMBER 24FC:0070

124.    On August 13, 2024 a formal complaint was filed with the Iowa Public Information Board ("IPIB) alleging, in relevant part, the Board violated Iowa Code chapter 21 when Supervisors Dimmitt and Drish were discussing the hiring process of the Ambulance Director via phone on or about June 24, 2024.

125.    On August 16, 2024, IPIB emailed the complaint to Moulding and included an audio attachment of the phone conversation between Supervisors Dimmitt and Drish.

126.    Moulding called Dimmitt to his office to discuss the recording and the complaint. Supervisor Dimmitt signed an affidavit regarding the same on August 16, 2024. Moulding incorporated Dimmitt's affidavit in his own affidavit signed and notarized on September 3, 2024.

127.    An informal resolution was agreed upon by the parties in the IPIB case. The Board acknowledged at an open meeting that there were sufficient facts to show the conversation between a majority of the Board discussing matters within its policy-making responsibilities could be found in violation of Iowa Code chapter 21.

## MOULDING INITIATES CRIMINAL CASE

128.    On or about September 3, 2024, Moulding signed an affidavit alleging Heisel recorded her end of employment meeting on August 5, 2024 in violation of Iowa Code § 728.8(2) and § 808B.2(1)(a).

129.    Moulding decided to draft the affidavit related to the August 5, 2024 recording after "additional concerns over criminal recording conducted by Ms. Heisel were raised in the subsequent weeks."

130.    Moulding forwarded the affidavit to Washington County Attorney's Office for consideration of whether or not to file criminal charges. Moulding acknowledged it being

improper for him to prosecute any criminal case because he was a witness and was close to the parties.

131.    In Moulding's affidavit he alleged:

a.    On August 5, 2024, Heisel was asked to show Hemminger around the building and they both left the Ambulance Director office. Moulding, ACA Estey, and Supervisor Drish remained in the Director's office and the door was closed.

b.    At some point, Moulding noticed Heisel had left her cell phone on the Director's desk. Moulding waved his hand above the screen "and the motion activated the screen, indicating the conversation taking place" was being audio recorded.

c.    "It should be noted that at no time did myself or Ms. Estey or Supervisor Drish touch or physically manipulate the phone."

d.    Moulding signaled non-verbally to the other two individuals in the room that the matter was being recorded.

**JEFFERSON COUNTY CRIMINAL CASE: STATE OF IOWA V. JUDY HEISEL**

132.    Between September 3, 2024 and September 23, 2024, Moulding's affidavit was provided to Fairfield Police Officer Rylee Nuno.

133.    Officer Nuno was not supposed to get guidance from Moulding on the charging decisions because he was a witness in the case.

134.    After receiving Moulding's affidavit, Officer Nuno called Moulding sometime around September 2024 before she realized she was not supposed to call him about it to get more information related to his affidavit.

135.    After this conversation, Officer Nuno later testified she did not have further communication with Moulding about the case.

136.    Officer Nuno drafted a supplemental report on September 23, 2024. Her report was mainly based on Moudling's affidavit. The only thing Officer Nuno reviewed as part of her investigation into alleged criminal charges against Heisel was Moulding's affidavit.

137.    On January 20, 2025, Officer Nuno filed a complaint and affidavit alleging Heisel of interception of communication in violation of Iowa Code § 808B.2(1)(a).

138.    On January 21, 2025, Officer Nuno filed a complaint and affidavit alleging Heisel of electronic and mechanical eavesdropping in violation of Iowa Code § 727.8.

139.    On January 29, 2025, Moulding sent an email to Officer Nuno and Chief Thomas acknowledging the complaints were filed and a warrant issued for Heisel. He said he thought it would be a good idea to pick up Heisel's phone to determine if the recording in question from August 5 remained on her phone.

140.    Heisel was charged by Trial Information on April 8, 2025 with Unlawful Interception of Communication, a Class D felony, in violation of Iowa Code §808B.2(1)(a) and Electronic or Mechanical Eavesdropping, a serious misdemeanor, in violation of Iowa Code § 727.8(2).

141.    At trial, Moulding testified to the following related to observing and interacting with Heisel's cell phone on August 5, 2024:

      a.    "I don't recall if I was placing paperwork on the desk or retrieving something. I noticed Mr. Heisel had left her cell phone on the desk, and when you looked at it, it appeared – it's an iPhone, and when an iPhone has the voice memo application running, it shows kind of voice wave fluctuations, so it appeared to me that Ms. Heisel had left her phone in the room, recording the conversation that we being had between myself and Ms. Drish."

E-FILED 2025 NOV 03 5:21 PM JEFFERSON - CLERK OF DISTRICT COURT

    b.   When Moulding first observed the cell phone on the desk, it was face up.

    c.   When Moulding first observed the cell phone: "I don't recall if it was in sleep mode or if it was on, but if it wasn't in sleep mode, it would have turned on. In any event, when I looked over at it, I noticed – the reason I noticed it was because it was recording, not because it was a cell phone."

    d.   Moulding then admitted he waved his hand over the screen when he was by the desk.

    e.   When asked why he waved his hand over Heisel's phone, his response was: "I think I was going for a document. For whatever reason I was at the desk. It activated the cell phone, I think."

    f.   Moulding testified he did not intentionally move his hand over the screen and that he was not there to manipulate her cell phone.

    g.   After Moulding's recollection was refreshed using his affidavit, he testified the phone was off / nothing was on the screen when he first observed the cell phone.

142. At trial, Moulding testified to the following regarding his involvement in the case:

    a.   The timing and charging decisions were entirely and independently handled by the special prosecutor.

143. A criminal jury trial commenced in Jefferson County on June 4, 2025.

144. On June 6, 2025 Judy Heisel was found not guilty on all counts.

E-FILED 2025 NOV 03 5:21 PM JEFFERSON - CLERK OF DISTRICT COURT

## CAUSES OF ACTION

## COUNT I— VIOLATION OF THE IOWA CIVIL RIGHTS ACT (SEX DISCRIMINATION)

(Against Defendant Jefferson County, Defendant Dimmitt, Defendant Drish, and Defendant Sandquist)

145.    Plaintiff incorporates all previous paragraphs of this Petition as if fully set forth herein.

146.    Under the Iowa Civil Rights Act, it is unlawful for an employer to discriminate against an employee because of her sex.

147.    Heisel was the only female applicant interviewed by the Board for the Ambulance Director position.

148.    Defendants discriminated against Heisel with respect to the terms and conditions of her employment on the basis of her sex in violation of the Iowa Code Chapter 216.

149.    Defendants discriminated against Heisel with respect to the terms and conditions of her employment on the basis of sex, as set forth above, and in the following ways:

   a.  Failure to pay Heisel the same amount as the previous male Ambulance Director while acting as Interim Ambulance Director.

   b.  Disparate treatment of Heisel during the interview process— including questioning her about her sexual relationships, accusing her of having inappropriate sexual relations at work, and accusing her of abusing prescription drugs— and preferential treatment of the other male applicants.

   c.  Failure to promote and hire Heisel as the Ambulance Director when she was more qualified than all other applicants.

E-FILED 2025 NOV 03 5:21 PM JEFFERSON - CLERK OF DISTRICT COURT

150.    Heisel suffered adverse employment action, including failure to be promoted/hired based on her sex, and effectively terminated her employment by eliminating her previously held position.

151.    Heisel's sex was a motivating factor for the discrimination.

152.    As a result of Defendants' actions and omissions, Heisel has in the past and will in the future suffer damages, including, but not limited to mental and emotional stress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; and lost wages, benefits, future earnings, and other emoluments of employment.

**WHEREFORE,** Plaintiff, Judy Heisel, prays for judgment against Defendants in an amount which will fully and fairly compensate her for her injuries and damages, for unpaid wages, compensation and benefits, liquidated damages equal to unpaid wages and benefits, interest as allowed by law, court costs, attorney fees, emotional distress, mental anguish, compensatory relief, equitable relief, and any other relief recoverable under the Iowa Civil Rights Act.

## COUNT II — VIOLATION OF IOWA PUBLIC POLICY

### (Against Defendant Jefferson County, Defendant Dimmitt, Defendant Drish, and Defendant Sandquist)

153.    Plaintiff incorporates all previous paragraphs of this Petition as if fully set forth herein.

154.    Under Iowa law, it is unlawful for an employer to retaliate against an employee for engaging in activity protected by Iowa public policy.

E-FILED 2025 NOV 03 5:21 PM JEFFERSON - CLERK OF DISTRICT COURT

155.    Plaintiff reported Damien Wimmer's misconduct in providing patient care outside his scope of practice as required by State law. As a result, she suffered adverse employment action.

156.    Jefferson County retaliated against Heisel by not promoting/hiring her as Ambulance Director, despite being the most qualified and experienced candidate because she engaged in protected activity.

157.    As a result of Defendants' actions and omissions, Heisel has in the past and will in the future suffer damages including, but not limited to: mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; and lost wages, benefits, future earnings, and other emoluments of employment.

**WHEREFORE,** Plaintiff, Judy Heisel, prays for judgment against Defendants in an amount which will fully and fairly compensate her for her injuries and damages, for unpaid wages, compensation and benefits, liquidated damages equal to unpaid wages and benefits, interest as allowed by law, court costs, attorney fees, emotional distress, mental anguish, compensatory relief, equitable relief, and any other relief recoverable under the Iowa Civil Rights Act.

### COUNT III – SLANDER PER SE AND SLANDER PER QUOD

(Against Defendant Jefferson County and Defendant Moreno)

158.    Plaintiff incorporates all previous paragraphs of this Petition as if fully set forth herein.

159.    On or about June 26, 2024, during Plaintiff's second interview for the Ambulance Director position, Defendant Moreno confronted and accused Plaintiff of abusing prescription drugs while at work.

160.    At the time the statements were made, Defendant Moreno was acting within her scope of employment with Jefferson County.

161.    Defendant Moreno's statements were made in an interview with other individuals present.

162.    The statements tended to injure Plaintiff's reputation, exposed Plaintiff to public ridicule, and injured Plaintiff in the maintenance of her employment.

163.    The statements were false.

164.    Defendant Moreno made the statements with malice.

165.    The statements caused Plaintiff injuries and damages.

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment against Defendant Jefferson County and Defendant Moreno including costs and interests, and for any other relief deemed appropriate under the circumstances.

## COUNT IV – CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. § 1983: VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION RIGHT TO BE FREE FROM UNREASONABLE SEARCHES

*(Against Defendant Moulding)*

166.    Plaintiff incorporates all previous paragraphs of this Petition as if fully set forth herein.

167.    Moulding is a person for the purposes of a Section 1983 action for damages and this Count is brought against him in his individual capacity.

168.    At all times material hereto, Moulding's actions and omissions were made under the color of state law.

169.    Moulding, in his sworn affidavit, stated he noticed Heisel had left her cell phone on the Director's desk. He waved his hand above the screen "and the motion activated the screen,

E-FILED 2025 NOV 03 5:21 PM JEFFERSON - CLERK OF DISTRICT COURT

indicating the conversation taking place" was being audio recorded. "It should be noted that at no time did myself or Ms. Estey or Supervisor Drish touch or physically manipulate the phone."

170.    By conducted an unauthorized search of the phone without a warrant and used the unlawfully obtained evidence to prosecute Heisel, deprived Heisel of her rights guaranteed by the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures. *See Alvarez v. City of Worcester,* 450 F. Supp. 3d 74 (D. Mass. 2020).

171.    Moulding's actions were willful, wanton, unlawful, and in gross disregard of Plaintiff's civil rights, justifying an award of punitive damages.

172.    As a result of Moulding's illegal and unjustified conduct, Plaintiff was injured and is entitled to recover for what has been suffered and will be suffered in the future.

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment against Moulding, including costs and interests, and for any other relief deemed appropriate under the circumstances.

## COUNT V: MALICIOUS PROSECUTION

(Against Defendant Jefferson County and Defendant Moulding)

173.    Plaintiff incorporates all previous paragraphs of this Petition as if fully set forth herein.

174.    Plaintiff was prosecuted in a criminal proceeding in State of Iowa v. Judy Heisel (FECR005421), in Jefferson County, Iowa.

175.    Moulding caused that prosecution through the authoring of his affidavit.

176.    Moulding caused the prosecution against Plaintiff while acting within the scope of his employment with Jefferson County.

177.    Plaintiff was acquitted by a jury on June 6, 2025; the prosecution ended favorably

E-FILED 2025 NOV 03 5:21 PM JEFFERSON - CLERK OF DISTRICT COURT

for Plaintiff.

178.    Defendant Moulding acted without probable cause.

179.    In the alternative, any probable cause obtained by Defendant Moulding was

obtained illegally, unlawfully, and in violation of Plaintiff's civil rights.

180.    Defendant Moulding acted with malice.

181.    The prosecution caused Plaintiff damages.

**WHEREFORE,** Plaintiff, Judy Heisel, prays for judgment against Defendant Jefferson

County and Defendant Moulding in an amount which will fully and fairly compensate her for her

injuries and damages, for interest as allowed by law, court costs, attorney fees, emotional

distress, mental anguish, compensatory relief, equitable relief, and any other relief recoverable

under Iowa law.


**COUNT VI – ABUSE OF PROCESS**

(Defendant Jefferson County, Defendant Dimmitt, and Defendant Moulding)

182.    Plaintiff incorporates all previous paragraphs of this Petition as if fully set forth

herein.

183.    Dimmitt and Moulding authored affidavits in response to learning a formal

complaint had been filed with IPIB against Jefferson County.

184.    Dimmitt and Moulding were both acting within the scope of their employment for

Jefferson County.

185.    Moulding and Dimmitt intentionally used the criminal legal process against

Plaintiff primarily to accomplish a purpose for which it was not designed.

186.    The improper purposes of the prosecution included but was not limited to: to aid

E-FILED  2025 NOV 03 5:21 PM JEFFERSON - CLERK OF DISTRICT COURT

the County in defending against an IPIB investigation, by which prosecution would allow Moulding to seize Plaintiff's phone, and to intimidate Plaintiff to not take civil action against the County for her wrongful end of employment.

187.    Defendants' use of the legal process for the improper purposes was a direct and proximate cause of Plaintiff's damages and injuries.

**WHEREFORE,** Plaintiff respectfully requests the Court enter judgment against Defendant Jefferson County, Defendant Dimmitt, and Defendant Moulding, including costs and interests, and for any other relief deemed appropriate under the circumstances.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a jury trial for all claims alleged herein.

E-FILED 2025 NOV 03 5:21 PM JEFFERSON - CLERK OF DISTRICT COURT

Respectfully submitted,

_____

Michael J. Carroll – AT0001311

_____

Danielle A. Dunne – AT0015704

CARNEY & APPLEBY LAW FIRM

400 Homestead Building

303 Locust Street

Des Moines, IA 50309

Phone: 515-282-6803

Email: mike@carneyappleby.com

Email : dunne@carneyappleby.com

ATTORNEYS FOR PLAINTIFF

Original e-filed

E-FILED  2025 NOV 03 5:21 PM JEFFERSON - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR JEFFERSON COUNTY

| | |
|---|---|
| JUDY HEISEL,<br><br>    Plaintiff,<br><br>vs.<br><br>JEFFERSON COUNTY, IOWA,<br>CHAUNCEY MOULDING (individually<br>and in his official capacity), LEE DIMMITT<br>(individually and in his official capacity),<br>SUSIE DRISH (individually and in her<br>official capacity), DEE SANDQUIST<br>(individually and in his official capacity),<br>AMANDA MORENO, M.D. (individually<br>and in her official capacity),<br><br>    Defendants. | CASE NO.<br><br><br><br>ORIGINAL NOTICE |

TO THE ABOVE-NAMED DEFENDANTS:

YOU ARE HEREBY NOTIFIED that a Petition has been filed in the office of the Clerk of this Court, naming you as a Defendant in this action. A copy of this Petition (and any documents filed with it) is attached to this notice. The attorneys for the Plaintiff are Michael J. Carroll and Danielle A. Dunne, 400 Homestead Building, 303 Locust Street, Des Moines, Iowa 50309. The attorneys' phone number is 515-282-6803; facsimile number 515-282-4700.

You must serve a motion or answer within 20 days after service of this Original Notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Jefferson County at the County Courthouse in Fairfield, Iowa. If you do not, judgment by default may be rendered against you for the relief demanded in the Petition.

This case has been filed in a county that utilizes electronic filing. General rules and information on electronic filing are contained in Iowa Court Rules Chapter 16. Information regarding requirements related to the protection of personal information in court filings is contained in Iowa Court Rules Chapter 16, Division VI.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at 515-286-3394. If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942.

**IMPORTANT:  <u>YOU ARE ADVISED TO SEEK LEGAL ADVICE AT ONCE TO PROTECT YOUR INTERESTS.</u>**

E-FILED  2025 NOV 04 11:53 AM JEFFERSON - CLERK OF DISTRICT COURT

# Iowa Judicial Branch

*Case No.*    **LALA004737**

*County*    **Jefferson**

*Case Title*    HEISEL, JUDY V. JEFFERSON COUNTY, ET AL.

You must file your Appearance and Answer on the Iowa Judicial Branch eFile System, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless the court has excused you from filing electronically (*see* Iowa Court Rule 16.302).

Register for the eFile System at www.iowacourts.state.ia.us/Efile to file and view documents in your case and to receive notices from the court.

For general rules and information on electronic filing, refer to the Iowa Rules of Electronic Procedure in chapter 16 of the Iowa Court Rules at www.legis.iowa.gov/docs/ACO/CourtRulesChapter/16.pdf.

Court filings are public documents and may contain personal information that should always be kept confidential.  For the rules on protecting personal information, refer to Division VI of chapter 16 of the Iowa Court Rules and to the Iowa Judicial Branch website at www.iowacourts.gov/for-the-public/representing-yourself/protect-personal-information/.

*Scheduled Hearing:*

If you need assistance to participate in court due to a disability, call the disability access coordinator at **(641) 684-6502** . Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). For more information, see www.iowacourts.gov/for-the-public/ada/.  **Disability access coordinators cannot provide legal advice.**

*Date Issued*  **11/04/2025 11:53:44 AM**



*District Clerk of Court or/by Clerk's Designee of* Jefferson          *County*

**/s/ Alli Deao**

E-FILED 2025 DEC 08 8:44 AM JEFFERSON - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR JEFFERSON COUNTY

| | |
|---|---|
| JUDY HEISEL, <br><br>      Plaintiff, <br><br> vs. <br><br> JEFFERSON COUNTY, IOWA, CHAUNCEY MOULDING (individually and in his official capacity), LEE DIMMITT (individually and in his official capacity), SUSIE DRISH (individually and in her official capacity), DEE SANDQUIST (individually and in his official capacity), AMANDA MORENO, M.D. (individually and in her official capacity), <br><br>      Defendants. | CASE NO. LALA004737 <br><br><br> ACCEPTANCE OF SERVICE |

**COMES NOW**, the undersigned, and hereby acknowledges receipt and accepts service of the Petition at Law and Jury Demand and Original Notice on behalf of Defendants Jefferson County, Chauncey Moulding, Lee Dimmitt, Susie Drish, and Dee Sandquist, effective December 4, 2025.

HOLLY A. CORKERY    AT0011495
    of
LYNCH DALLAS, P.C.
316 Second Avenue SE, Suite 124
P.O. Box 2457
Cedar Rapids, Iowa 52406-2457
Telephone 319.365.9101
Facsimile 319.365.9512
E-Mail:  hcorkery@lynchdallas.com

ATTORNEY FOR DEFENDANTS JEFFERSON COUNTY, CHAUNCEY MOULDING, LEE DIMMITT, SUSIE DRISH AND DEE SANDQUIST