UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JUDY HEISEL, | ) |
|     Plaintiff, | ) No. 4:25-cv-00505-SHL-SBJ |
| vs. | ) |
| JEFFERSON COUNTY, IOWA, CHAUNCEY MOULDING (individually and in his official capacity), LEE DIMMITT (individually and in his official capacity), SUSIE DRISH (individually and in her official capacity), DEE SANDQUIST (individually and in her official capacity), AMANDA MORENO, M.D. (individually and in her official capacity), | ) **PLAINTIFF'S BRIEF IN SUPPORT OF HER RESISTANCE TO DEFENDANTS' PRE-ANSWER PARTIAL MOTION TO DISMISS** |
|     Defendants. | |

## PROCEDURAL BACKGROUND AND STANDARDS

On November 3, 2025, Plaintiff Judy Heisel filed her Petition in state court to recover damages sustained as a result of her termination of employment with Jefferson County as well as other claims collateral to her employment and discharge. These claims included: sex discrimination, slander, and violation of public policy. In addition to her employment claims, Plaintiff also brought a § 1983 claim, an abuse of process claim, and a malicious prosecution claim. In response to her § 1983 claim, Defendants Jefferson

1

County, Chauncy Moulding, Lee Dimmitt, Susie Drish, and Dee Sandquist removed to Federal Court on December 19, 2025.[1] On January 16, 2026, Defendants Jefferson County, Chauncey Moulding, Lee Dimmitt, Susie Drish, and Dee Sandquist moved to partially dismiss Plaintiff's Petition under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim has facial plausibility when its allegations rise above the "speculative" or "conceivable," and where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  A complaint will be liberally construed in the light most favorable to the plaintiff.  E*ckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).  "Finally, the complaint should be *read as a whole, not parsed piece by piece* to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (emphasis added). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)(quoting *Scheuer v. Rhods,* 416 U.S. 232, 236 (1974)). A

---

[1] Defendant Amanda Moreno was not listed on the Notice of Removal as joining in removal.

plaintiff must show sufficient factual allegations that show they are not merely engaged in a fishing expedition, but "[a court] must also take account of [his or her] limited access to crucial information." *Braden*, 588 F.3d at 597.

## ARGUMENT

I. **Count IV of Plaintiff's Complaint sets forth a viable 42 U.S.C. § 1983 claim for an unreasonable search in violation of the Fourth Amendment by Defendant Moulding.**

   A. **The Complaint sufficiently alleges a search occurred.**

For a 42 U.S.C. § 1983 claim, Plaintiff must allege: "(1) the violation of a right secured by the Constitution and laws of the United States, and (2) by a person acting under color of state law" *Yassin v. Weyker*, 39 F.4th 1086, 1089 (8th Cir. 2022) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff's Complaint alleges Defendant Moulding waved his hand over Plaintiff's cell phone. (ECF 1-2 at ¶ 169.) Defendant Moulding's action in waving his hand over the cell phone, caused the phone's screen to activate. (ECF 1-2 at ¶ 169). This conduct constitutes an unreasonable search, in violation of her Fourth Amendment constitutional rights. It is undisputed that Defendant Moulding was and is a person acting under color of state law.

In support of Defendants' argument that Plaintiff did not allege a search occurred, they cite touchstones of Fourth Amendment case law: *Smith*, *Kyllo*, and *Hicks*, all of which are outdated in the context of searches of cell phones. *See Smith v. Maryland*, 442 U.S. 735

3

(1979); *see also Kyllo v. United States*, 533 U.S. 27 (2001); *see also Arizona v. Hicks*, 480 U.S. 321 (1987). Defendants emphasize and discuss *United States v. Puckett,* but *Puckett* concerned a consensual search of a vehicle. *United States v. Puckett,* 139 F.4th 730, 739 (8th Cir. 2025). The Defendant consented to a search of his vehicle during a traffic stop. During the "broadly defined consensual search," the trooper grabbed the cell phone, causing the screen to illuminate. *Id.* at 739. In the context of a consensual search, the Court found "a search for drugs or other stolen items could naturally result in the movement of items during the course of the search, including a cell phone…some incidental movement of a cell phone left on the seat of the vehicle is not unreasonable *while searching an automobile…" Id.* at 740 (emphasis added). Unlike in *Puckett,* Plaintiff did not consent to Defendant Moulding searching any of her personal property, including, but especially her personal cell phone, while at work.

The case most factually similar to this one is *Alvarez v. City of Worcester.* In *Alvarez,* Plaintiff sued the City of Worcester and one of the City's police officers for unlawfully searching his cell phone and presenting false testimony against him stemming from Plaintiff's arrest and vacated criminal conviction. *Alvarez v. City of Worcester*, 605 F. Supp. 3d 304 (D. Mass. 2022). The officer, McKiernan, suspected Alvarez of engaging in drug transactions. *Id.* at 308. Alvarez was arrested, and while McKiernan searched him incident to arrest, he recovered Alvarez's flip-style cell phone. *Id.* While McKiernan was drafting his incident report, he documented that while he was completing his report, Alvarez's

4

cell phone rang many times, and he saw a message pop up on the screen, which he alleged was common language to purchase illegal drugs. He further stated he did not access the cell phone. *Id.* Alveraz moved to suppress the text message and argued McKiernan unlawfully searched his phone. *Id.*

At the suppression hearing, McKiernan testified he did not attempt to open or look at the phone, that he saw messages come up on the phone, and he did not have to open the phone in any way to see the messages. *Id.* at 309. The suppression motion was denied because "McKiernan did not flip open or answer the phone, he simply observed information on the screen of the lawfully seized phone." *Id.* On appeal, the Massachusetts Supreme Judicial Court affirmed the denial of the motion to suppress through reasoning that "'glancing at the ringing cell phone and observing a text message on its outer screen,' McKiernan had not conducted a search, and that '[t]here as no evidence that [McKiernan] opened the cell phone, manipulated it to view the text message, or otherwise perused its contents." *Id.* (quoting *Commonwealth v. Alvarez*, 105 N.E.3d 237, 239 (Mass. 2018)).

At Alvarez's jury trial, the prosecutor relied on the text messages observed by McKiernan to prove Alvarez was selling drugs. Alvarez was convicted on drug distribution charges and was sentenced to prison. *Id.* Alveraz sought expert funds to investigate a claim for a new trial. A cell phone expert investigated and determined that the phone was incapable of displaying the content of a text message on the outer screen

while in a closed position. Alvarez requested a new trial and the Commonwealth filed notice it did not intend to prosecute. *Id.*

Alvarez then sued alleging multiple violations of his rights. In the civil case, McKiernan represented that his incident report was "truthful and accurate," that he never intentionally testified falsely or inaccurately, and claimed he had "insufficient information to enable him" to determine whether he saw the messages on the outside on the phone; he then suggested the phone may have already been in an open position when the message came to the phone. *Id.* at 309–10.

At summary judgment, the District Court found McKiernan's warrantless search of the phone was unlawful. *Id.* at 310. Specifically, the Court found, "[o]pening a flip phone to view the contents of the inner screen of the phone constitutes a search because it exposes to view concealed portions of the phone." *Id.* (citations omitted). Not only is Defendant Moulding's conduct as alleged in this action similar, but his arguments are also analogous to McKiernan's in *Alvarez.* Defendant Moulding's sworn affidavit stated he noticed Heisel had left her cell phone on a desk and that he waved his hand above the screen "and *the motion activated the screen…*" (ECF 1-2 at ¶ 131(b)) (emphasis added). Defendant Moulding's intentional act of waving his hand over Plaintiff's cellphone constituted a manipulation of the cell phone similar to McKiernan's opening the flip phone. *See Alvarez*, 605 F. Supp. 3d at 309–10. In McKiernan's testimony at the criminal suppression hearing, he said he did not attempt to open or look at the phone, that he saw

messages come up on the phone, and he did not have to open the phone in any way to see the messages. *Id.* at 309.

In similar fashion, Defendant Moulding in his sworn affidavit specifically wrote, "It should be noted that at no time did myself or Ms. Estey or Supervisor Drish touch or physically manipulate the phone." After expert analysis of the phone concluded McKiernan's testimony could not have been true, McKiernan's representation in the civil case shifted; he maintained he saw a message on the cell phone, did not press buttons, and suggested the phone may have already been in an open position when the text messages came in. *Id.* at 309–10. Moulding's testimony at Heisel's criminal trial shifted, much like McKiernan's did. Defendant Moulding changed his story to claim he was placing paperwork or retrieving something from the desk (though he couldn't recall), and noticed the cell phone and when he looked at it, it showed voice wave fluctuations, which he attributed to the iPhone voice memo application. (ECF 1-2 at ¶ 141(a)). He could not remember if the phone was in sleep mode or if it was on when he first observed the cell phone. (ECF 1-2 at ¶ 141(c)). But after his recollection was refreshed with his affidavit, Moulding admitted the phone was off and nothing was on the screen when he first observed the cell phone. (ECF 1-2 at ¶ 131(g). Plaintiff anticipates expert analysis of the cell phone would also conclude that Defendant Moulding's testimony could not be true.

Taking all the facts in light most favorable to Plaintiff, the Complaint alleges sufficient factual matter that would allow the Court to draw a reasonable inference that Moulding is liable for an unconstitutional search.

### B. Moulding is not entitled to qualified immunity.

"Qualified immunity shields government officials from federal suit unless their conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Anderson v. Larson*, 327 F.3d 762, 769 (8th Cir. 2003) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity defense fails if "the official violates a clearly established right because 'a reasonably competent public official should know the law governing his conduct.'" *Id.* (citing *Harlow*, 457 U.S. 818–19).

Defendant Moulding violated Plaintiff's constitutional rights by unlawfully searching her phone. At the time of Moulding's alleged unlawful conduct, on August 5, 2024, it was clearly established that a warrant is required to search a cell phone. *See Riley v. California*, 573 U.S. 373 (2014); *see also Carpenter v. United States*, 585 U.S. 296 (2018). Further, it is more appropriate to defer consideration of the qualified immunity defense "until the court is presented with a summary judgment motion, after the affirmative defense has been pleaded, and some discovery has been conducted, than it is for the court to consider the sufficiency of the affirmative defense at the pre-answer stage of the proceedings." *Mercer v. City of Cedar Rapids*, 79 F. Supp. 2d 1055, 1066 (N.D. Iowa 1999).

II. **The Complaint sufficiently pleads actual malice for the malicious prosecution claim.**

The Complaint adequately pleads all six elements of a malicious prosecution claim. (ECF 1-2 at ¶ 173–181). Because Defendant Moulding is a public official, Plaintiff must plead "actual malice." *Moser v. Black Hawk Cnty.*, 300 N.W.2d 150 (Iowa 1981). Actual malice is primarily inspired by "ill-will, hatred, or other wrongful motives." *Vander Linden v. Crews*, 231 N.W.2d 904, 906 (Iowa 1975). Taken as a whole, the Complaint in this case tells a story of an employer that wrongfully terminated the Plaintiff. (ECF 1-2 at ¶ 116–44). On August 16, 2024, the Iowa Public Information Board notified Moulding of a complaint against the Jefferson County Board of Supervisors involving Plaintiff. (ECF 1-2 at ¶ 124–25). On the same day, he not only discussed the complaint with Supervisor Dimmitt, but a notarized affidavit regarding the complaint was executed and eventually incorporated into Moulding's affidavit. (ECF 1-2 at ¶ 124–26). Moulding's affidavit was the sole piece of evidence reviewed by the investigating officer, and therefore, the only piece of information used to initiate criminal charges. (ECF 1-2 at ¶ 130, 136). Defendant Moulding even admitted to authoring his affidavit almost one month after the alleged conduct when "additional concerns" were raised in the subsequent weeks. (ECF 1-2 at ¶ 128–29). Despite acknowledging it was improper for him to prosecute the criminal case and acknowledging he was a witness, he emailed the investigating officer and the

Fairfield Chief Police, commenting on the case, and giving advice related to seizing Plaintiff's cell phone upon her arrest. (ECF 1-2 at ¶ 130, 139).

That the criminal prosecution of the Plaintiff came quickly after her problematic firing from the Jefferson County Ambulance Service – following an interview and hiring process allegedly polluted by slander and sexism – and after exposing the Board of Supervisors' violations of Iowa law, demonstrates ill-will and wrongful motives. Taking all facts in light most favorable to Plaintiff, read as a whole, a Court could draw a reasonable inference that Moulding acted with actual malice.

### III. The Complaint sufficiently pleads a claim for abuse of process.

Abuse of process is "the use of legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it was not designed." *Phelps v. Powers*, 5 F. Supp. 3d 1036, 1041 (S.D. Iowa 2013)(quoting *Fuller v. Local Union No. 106*, 567 N.W.2d 419, 421 (Iowa 1997)). A plaintiff must demonstrate defendant "used legal process for an improper purpose, i.e., 'to secure…some collateral advantage not properly includable in the process itself.'" *Id.* (quoting *Fuller*, 567 N.W.2d at 421). "[U]sing…[legal] process to put pressure upon the other to compel him to pay a different debt" satisfies the second element of the abuse-of-process claim." RESTATEMENT (SECOND) OF TORTS §682 cmt. b. Defendant Moulding caused a criminal case to be initiated against Plaintiff. Then used the criminal case as a vehicle to try to obtain Plaintiff's cell phone to aid in the

County's defense of an IPIB investigation. (ECF 1-2 at ¶ 139). The pleaded factual allegations give rise to a plausible entitlement to relief on the abuse of process claim.

Accepting all the factual allegations in the complaint as true, including, but not limited to, the allegations related to Moulding's conduct in searching Heisel's phone, Plaintiff has pleaded sufficient facts to support her abuse of process claim.

## CONCLUSION

Plaintiff sufficiently plead all claims in her Complaint. All of the claims are facially plausible. As such, Defendants' partial pre-answer motion to dismiss should be denied.

Respectfully submitted,
CARNEY & APPLEBY, P.L.C.

*/s/ Michael J. Carroll*
Michael J. Carroll (AT0001311)

*/s/ Danielle A. Dunne*
Danielle A. Dunne (AT0015704)
303 Locust Street, Suite 400
Des Moines, IA 50309-1770
Telephone:  (515) 282-6803
Facsimile:   (515) 282-4700
E-mail:  mike@carneyappleby.com
ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury that on February 13, 2026 a true copy of the foregoing was served either electronically through the court's electronic-filing system or by U.S. First Class Mail upon the following:

Holly A. Corkery
Madison P. Huntzinger
LYNCH DALLAS LEGAL
Attorneys for Jefferson County,
Moulding, Dimmitt, Drish, Sandquist

Dr. Amanda Moreno
Defendant

/s/ Danielle A. Dunne
Danielle A. Dunne
Attorney for Plaintiff